UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

```
-------------------------------------------------------- x
In re:                                             :
                                                   :     Chapter 7
ROYANNA NATASHA ROYALE HUDSON,   :
                                                   :     Case No.: 26-30084
                     Debtor.          :
                                                   :
-------------------------------------------------------- x
```

**OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY TO REDEEM
PERSONAL PROPERTY AND APPROVAL OF ASSOCIATED FINANCING AND
ATTORNEY FEES UNDER 11 U.S.C. § 722**

Exeter Finance LLC ("Exeter"), a secured creditor herein, by and through its undersigned attorneys, files its objection to Debtor's Motion for Authority to Redeem Personal Property and Approval of Associated Financing and Attorney Fees Under 11 U.S.C. § 722 (the "Motion") and states as follows:

1. On January 23, 2026, Royanna Natasha Royale Hudson (the "Debtor"), filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Petition Date").

2. On February 5, 2026, the case was converted to Chapter 7.

3. This Court has jurisdiction of the parties and the subject matter pursuant to 28 U.S.C. §§157, 1334 and 11 U.S.C. § 1324.

4. On March 24, 2025, the Debtor executed and delivered that certain Retail Installment Contract (the "Contract") to Exeter for the purchase of a 2021 Jeep Grand Cherokee bearing Vehicle Identification Number 1C4RJKBGM8M141155 (the "Collateral"). A true and correct copy of the Contract is attached hereto as **Exhibit "A."**

5. In order to secure its purchase money security interest evidenced by the Contract, Exeter recorded it's lien by notating the Title (the "Title"), a true and correct copy of which is attached hereto as **Exhibit "B."**

6. Exeter is owed $24,503.97 ("Exeter's Claim").

7. The interest of the Debtor in the Vehicle is exempt or has been abandoned by the estate.

8. The value of the collateral is $29,000.00. The J.D. Power Used CarGuide value for the collateral is attached as **Exhibit "C."**

9. 11 U.S.C. § 722 provides that a debtor may "redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt . . . by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption."

10. The Debtor proposes to pay Exeter $22,000.00.

11. Exeter objects to the extent that Debtor proposes to pay an amount less than the secured portion of Exeter's Claim.

12. Further, to the extent that Debtor's motion does not contemplate any financing obtained, Exeter objects to the extent Debtor does not intend to pay Exeter in full upon the entry of an order granting the Motion.

13. The Debtor's schedules further do not reflect the ability for the Debtor to pay for the Vehicle in cash upon the entry of an order granting the Motion.

WHEREFORE, Exeter requests this Court to deny the Motion and for such further relief as this Court deems appropriate.

Dated:  April 27, 2026                           WOMBLE BOND DICKINSON (US) LLP

By:  /s/ Eudora F. S. Arthur
EUDORA F. S. ARTHUR
N.C. State Bar. No. 59854
555 Fayetteville Street, Suite 1100
Raleigh, NC  27601
Telephone: (919) 755-2178
dorie.arthur@wbd-us.com

*Attorneys for Exeter Finance LLC*

**EXHIBIT A**

# CARMAX

**Consumer Credit Sale**

**RETAIL INSTALLMENT CONTRACT**

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

**Contract Number** ▮▮▮▮▮▮▮

**Contract Date** 03/24/2025

| | Name | Address | Zip Code |
|---|---|---|---|
| **Seller** CarMax Auto Superstores, Inc. | | 10510 CADILLAC STREET | PINEVILLE, NC 28134 |
| **Buyer** ROYANNA NATASHA ROYALE HUDSON | | 626 FOUNTAIN CT | FORT MILL, SC 29715 |
| **Co-Buyer** N/A | | N/A | N/A |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 2,100.00. |
|---|---|---|---|---|
| 25.43 % | $ 37,669.52 e* | $ 35,053.00 | $ 72,722.52 e* | $ 74,822.52 e* |

**Your Payment Schedule will be:**  *e means an estimate

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 78 | $ 932.34 | Monthly, beginning 05/08/2025 |

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $18.00.

**Prepayment.** If you pay amounts owed under this Contract early, you will not have to pay a penalty.

**Additional Information:** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____N/A_____ (in months)

I want the optional GAP contract.

Buyer Signs: _____N/A_____

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model 2021 JEEP GRAND CHEROKEE L

VIN 1C4RJKBGXM8144155

New _____ Used ___X___

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household ___X___
Business or Commercial _____ Agricultural _____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":

Year/Make/Model N/A
VIN N/A

Year/Make/Model N/A
VIN N/A

### YOUR PROMISE TO PAY

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| **A. CASH PRICE** | | |
| 1. Cash Price of Vehicle | $ | 35,998.00 |
| 2. Cash Price of CarMax Accessories | $ | 0.00 |
| 3. CarMax Processing Fee | $ | 599.00 |
| 4. Sales / Excise Tax | $ | 0.00 |
| 5. Other: N/A | $ | 0.00 |
| 6. Other: N/A | $ | 0.00 |
| 7. Total Cash Price [1 through 6] | $ | 36,597.00 |
| **B. DOWNPAYMENT** | | |
| 1. Cash Downpayment | $ | 2,100.00 |
| 2. Manufacturer's Rebate | $ | 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | | |
| a. Value of "Trade-In" | $ | 0.00 |
| b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
| c. Pay-Off of "Trade-In" | $ | 0.00 |
| d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ | 0.00 |
| 4. Other: N/A | $ | 0.00 |
| 5. Total Downpayment [1 through 4] | $ | 2,100.00 |
| **C. UNPAID BALANCE OF CASH PRICE [A minus B]** | $ | 34,497.00 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | | |
| 1. Optional GAP Waiver Agreement | $ | 0.00 |
| 2. To Public Officials | | |
| a. SC Registration Fee | $ | 40.00 |
| b. SC Title Fee | $ | 15.00 |
| c. NC Temp Tag Fee | $ | 1.00 |
| d. N/A | $ | 0.00 |
| e. N/A | $ | 0.00 |
| f. SC Infrastructure Maintenance Fee | $ | 500.00 |
| g. N/A | $ | 0.00 |
| h. N/A | $ | 0.00 |
| 3. To N/A for Optional Extended Service Contract | $ | 0.00 |
| 4. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 5. Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 4] | $ | 556.00 |
| **E. AMOUNT FINANCED [C plus D]** | $ | 35,053.00 |

*Seller may retain a portion of this amount.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials           Co-Buyer's Initials _____

RIC9033
Order #: 1395582
Rev. Date 05/24

DMS Tracking #: 5060655
03/24/2025 05:06 PM

Reprint #: 0



MIS ID: 50000018
Legal - GF

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of North Carolina apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** You will pay a processing charge of $35 for any payment made by check that your financial institution refuses to pay because of insufficient funds or the lack of an account.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** Following any notice required by law, you agree to pay our reasonable attorney fees, plus court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee. The attorney fees will not exceed 15% of the amount owed under the Contract at the time we initiate legal action.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers you provide to us in any manner and at any time, including emails addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _____     Co-Buyer's Initials _____

RIC9033
Rev. Date 05/24

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

### ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, www.adr.org, (800) 778-7879 or (2) JAMS, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.**

Buyer's Initials _____*MM*_____    Co-Buyer's Initials _____

RIC9033
Rev. Date 05/24

03/24/2025 05:06 PM
DMS Tracking #: 5060656
Reprint #: 0

MIS ID: 50000019

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

---

## NO LIABILITY INSURANCE INCLUDED
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

---

PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE Exeter Finance, LLC _____ INSURED'S NAME ROYANNA NATASHA ROYALE HUDSON

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 1,000.00 _____ COLLISION $ 1,000.00

INSURANCE COMPANY PROGRESSIVE

POLICY NUMBER [REDACTED] _____ EFFECTIVE DATE 03/11/2025 _____ EXPIRATION DATE 09/11/2025

INSURANCE AGENT NAME PROGRESSIVE _____ TELEPHONE NUMBER (800) 776-4737

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

---

### USED CAR BUYERS GUIDE

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### 10-DAY MONEY BACK GUARANTEE

You may return the Vehicle to the Seller in the same condition (except for ordinary wear and tear) within 10 calendar days of your purchase.

### ENTIRE AGREEMENT

This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

### ELECTRONIC DISCLOSURE

☒ If checked, you agree to use electronic records and electronic signatures to document this Contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this Contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local laws and regulations.

**This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.**

Seller  CarMax Auto Superstores, Inc. _____ Buyer's Signature  ROYANNA NATASHA ROYALE HUDSON

By  Chuong D Hong _____ Co-Buyer's Signature _____

---

### ASSIGNMENT

Seller hereby sells, assigns and transfers to  Exeter Finance, LLC _____ (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor  Chuong D Hong _____

Date  03/24/2025 _____ Title  CarMax Associate _____

RIC9033
Rev. Date 05/24

EXHIBIT

B



# STATE OF SOUTH CAROLINA
## CERTIFICATE OF TITLE
### OF A VEHICLE

| VEHICLE ID NUMBER | YEAR | MAKE | MODEL | NEW/USED |
|---|---|---|---|---|
| 1C4RJKBGXM8144155 | 2021 | JEEP | GRAND | USED |

| BODY STYLE | DATE ISSUED | ODOMETER | WEIGHT | TITLE NUMBER |
|---|---|---|---|---|
| SU | 04/23/2025 | 28,500 | 4,746 | 770960484518514 |

BRAND(S)
**ACTUAL MILEAGE**

FULL NAME OF OWNER(S)     CUSTOMER NUMBER  **036408265**
**HUDSON, ROYANNA**
**626 FOUNTAIN CT**
**FORT MILL SC 29715-6479**

LIENHOLDER INFORMATION
FIRST LIENHOLDER
**EXETER FINANCE LLC**

**PO BOX 677**                                    **WILMINGTON   OH
                                                  45177-0677**

DATE OF LIEN **03/24/2025**   LIEN RELEASED DATE _____ BY _____
                                                        AUTHORIZED AGENT

THE SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES HEREBY CERTIFIES
THAT THE PERSON HEREIN IS REGISTERED BY THIS DEPARTMENT AS THE
LAWFUL OWNER OF THE VEHICLE DESCRIBED SUBJECT TO THE LIENS,
IF ANY, HEREIN SET FORTH

KEVIN A  SHWEDO                          HENRY MCMASTER
EXECUTIVE DIRECTOR                       GOVERNOR

KEEP IN A SAFE PLACE, ANY ALTERATION OR ERASURE VOIDS THIS TITLE

059502866

EXHIBIT
C
4/22/2026

JD Power Used Cars/Trucks

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | 2021 Jeep Grand Cherokee L Utility 4D Limited 4WD 3.6L V6 |
| **Region:** | Southeastern |
| **Period:** | April 21, 2026 |
| **VIN:** | 1C4RJKBGXM8144155 |
| **Mileage:** | 53,000 |
| **Base MSRP:** | $46,405 |
| **Typically Equipped MSRP:** | $50,495 |
| **Weight:** | 4,779 |



## JD Power Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly Used** | | | | |
| Rough Trade-In | $20,725 | $1,425 | $450 | **$22,600** |
| Average Trade-In | $22,150 | $1,425 | $450 | **$24,025** |
| Clean Trade-In | $23,300 | $1,425 | $450 | **$25,175** |
| | | | | |
| Clean Loan | $20,975 | $1,425 | $450 | **$22,850** |
| Clean Retail | $27,075 | $1,425 | $500 | **$29,000** |
| **Weekly Auction** | | | | |
| Low | $20,075 | $1,425 | N/A | **$21,500** |
| Average | $22,550 | $1,425 | N/A | **$23,975** |
| High | $25,050 | $1,425 | N/A | **$26,475** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| Navigation System [VIN Precision+] | $225 | $250 |
| Panoramic Power Sunroof [VIN Precision+] | $375 | $425 |
| W/out Cooled Front Seats [VIN Precision+] | -$150 | -$175 |

JD Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2026 JD Power